UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| DAVID SCOTT HARRISON,<br><br>Plaintiff,<br><br>v.<br><br>S. KERNAN, et al.,<br><br>Defendants. | Case No. 16-cv-07103-RMI<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AS MOOT**<br><br>Re: Dkt. No. 96 |

    Plaintiff, an elderly inmate at San Quentin State Prison, brought this action to challenge a policy (Cal. Code Regs. tit. 15, § 3190(b)(1)-(5)) (hereafter, the "Policy") promulgated by California Department of Corrections and Rehabilitation (hereafter, "CDCR") regarding property possession rules that prohibited him from possessing many of the same items of property that female inmates of the same or higher security classification[1] are allowed to have. *See generally* Compl. (dkt. 1-1) at 5-103; *see also* Pl.'s Mot. (dkt. 91) at 6. Exemplars of some of the items that the Policy permits women, but not men, to possess includes the card game Uno, ketchup, and cotton balls. *See id*. Arguing that the court must apply intermediate scrutiny to the Policy, Plaintiff contended that CDCR's objective for its discriminatory Policy is illegitimate because CDCR cannot show a close fit between its gender-based personal property restrictions and the interests that CDCR claims necessitate the distinctions enshrined in the Policy. *See generally* Pl.'s Mot. (dkt. 91) at 11-16.

    During the pendency of this case, however, "[o]n November 1, 2023, [CDCR] implemented new property regulations for all inmates, including Plaintiff, that supplant the challenged regulations." *See* Def.'s Mot. (dkt. 96) at 2. Consequently, "CDCR no longer enforces

1   the old inmate-property regulations, which Plaintiff alleges violated his equal protection rights."
2   *Id*. Defendant submits that this renders "Plaintiff's challenge [] moot because there is no relief this
3   Court can afford Plaintiff, other than an impermissible advisory opinion." *Id*. Plaintiff disagrees
4   and submits that the newly enacted property schedule continues to differentiate on the basis of
5   gender, prohibiting male prisoners from possessing items that female prisoners of the same (or
6   higher) security classification may possess – items such as brassieres, panties, feminine hygiene
7   wash, hair clips, curling irons, earrings, alarm clocks, tweezers, and plastic hangers. *See* Pl.'s
8   Reply (dkt. 97) at 7-8. Consequently, Plaintiff contends that the case is not moot because the new
9   regulations do not fundamentally change the previously-challenged regulations. *Id*. at 6. In the
10  alternative, Plaintiff submits that he should be permitted to amend his complaint in light of the
11  newly promulgated superseding regulations. *See id*. at 9-10. Defendant points out that the Prison
12  Litigation Reform Act's ("PLRA") exhaustion provisions (42 U.S.C. § 1997e(a)) require inmates
13  to exhaust available administrative remedies before filing lawsuits regarding prison conditions,
14  and that courts may not consider unexhausted claims. *See* Def.'s Reply (dkt. 103) at 4-5 (citing
15  *Jones v. Bock*, 549 U.S. 199, 218, 220 (2007). Defendant adds that "[r]equiring proper exhaustion
16  serves the PLRA's overall goals, including giving prisons a fair opportunity to address inmate
17  complaints and correct their own errors, reducing the quantity of prisoner suits, and improving the
18  quality of prisoner suits that eventually get filed by creating an administrative record helpful to the
19  court." *Id*. at 5 (citing *Woodford v. Ngo*, 548 U.S. 81, 83-84, 94-95 (2006)).

20  As an initial matter, the court disagrees with Plaintiff's contention that his challenge to the
21  now-superseded inmate-property regulations is not moot. First, the court will note that it is
22  undisputed that the new regulations are intended to be permanent, as opposed to provisional (for
23  the duration of this case, or in response to the pendency of this case). *Cf. Schweiker v. Gray*
24  *Panthers*, 453 U.S. 34, 42 n.12 (1981) ("In issuing the provisional regulations, the Secretary
25  simply was adhering to the lower court's reasoning and mandate," and the Secretary had
26  represented "that the new regulations probably would be rescinded if the Court of Appeals'
27  decision were reversed."); *see also Maher v. Roe*, 432 U.S. 464, 468 n.4 (1977) (adoption of a new
28  regulation did not moot an appeal involving the previous regulation when the new regulation was

2

1    "only for the purpose of interim compliance with the District Court's judgment and order" and
2    when the "appeal was taken and submitted on the theory that [the state] desires to reinstate the
3    invalidated regulation."). Second, it should be noted that Plaintiff's claim was not simply that the
4    old Policy differentiated between the lists of items that could be possessed by male and female
5    prisoners – but rather that CDCR did so either baselessly or without constitutionally adequate
6    justification. Therefore, in responding to Defendant's suggestion of mootness, Plaintiff's argument
7    to the effect that the new regulations *also* make some distinctions between items that male and
8    female prisoners may possess misses the mark. In short, the court finds Plaintiff has not contended
9    that CDCR's allegedly flawed *justifications* for its property-possession classifications have
10   remained unchanged. Indeed, as Defendant points out, CDCR's rule-making process is still
11   ongoing, and therefore, the transition between the adoption of the emergency regulations (now in
12   effect) and the permanent regulations (soon to be in effect) – as well as the enumeration of the
13   stated justifications therefor – is currently still taking place.
14          Article III of the Constitution grants the federal judiciary the authority to adjudicate only
15   live "Cases" and "Controversies," thus, courts have no authority to decide abstract legal disputes
16   or to expound on the law in the absence of such a case or controversy. *See DaimlerChrysler Corp.*
17   *v. Cuno*, 547 U. S. 332, 341 (2006). Further, an "actual controversy" must exist not only at the
18   outset of litigation, but throughout all of its stages. *Alvarez v. Smith*, 558 U. S. 87, 92 (2009). A
19   case becomes moot for purposes of Article III when the issues presented are no longer "live," or
20   when the parties no longer have a legally cognizable interest in the outcome. *Already, LLC v. Nike,*
21   *Inc.*, 568 U.S. 85, 91 (2013). No matter how vehemently a party continues to dispute the
22   lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute "is no longer
23   embedded in any actual controversy about the plaintiffs' particular legal rights." *Alvarez*, 558 U.S.
24   at 93. While the voluntary cessation of the complained-of conduct does not automatically render a
25   case moot (*see City of Mesquite v. Aladdin's Castle, Inc.*, 455 U. S. 283, 289 (1982)), courts
26   generally presume that a government entity is acting in good faith when it changes its policy. *See*
27   *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010). In general, a
28   "statutory change . . . is usually enough to render a case moot, even if the legislature possesses the

3

1    power to reenact the statute after the lawsuit is dismissed." *Chem. Producers & Distribs. Ass'n v.*
2    *Helliker*, 463 F.3d 871, 878 (9th Cir. 2006).

3          Here, Plaintiff's challenge was not based simply on CDCR's conduct – such that there
4    would be a concern about certain objectionable behavior being repeated in the future. Instead,
5    Plaintiff complained that female prisoners were permitted to possess certain items (such as
6    ketchup and cotton balls) that male prisoners were not permitted to possess <u>without adequate
7    justification</u>. Defendant has since superseded the Policy that permitted and justified these
8    distinctions and has replaced it with another policy and another set of justifications – in response
9    to which Plaintiff has not stated any specific objectionable distinction (among possessable items)
10   and justification (underlying the distinction) occurring after the implementation of the new policy
11   other than to simply state that the new regulations still draw distinctions between items that male
12   and female prisoners may possess. However, it goes without saying that an observation like that,
13   alone, is insufficient to make out a gender discrimination claim. Thus, it appears that the
14   promulgation and enactment of the new regulations renders Plaintiff's claims under the superseded
15   Policy moot. *See e.g., White v. Lee*, 227 F.3d 1214, 1225 (9th Cir. 2000) ("However, because
16   HUD had implemented and memorialized a new policy prohibiting agency investigations into
17   protected First Amendment activity and the plaintiffs had not alleged any specific objectionable
18   conduct occurring after the implementation of that policy, the district court concluded that there
19   was no live controversy under Article III. Accordingly, pursuant to Federal Rule of Civil
20   Procedure 12(b)(1), it dismissed the plaintiffs' claim for prospective relief as moot."). In other
21   words, whether the court were to affirm, or strike down, the superseded Policy, neither Party
22   would have a legally cognizable interest in either outcome – thus, Plaintiff's challenge to the
23   superseded Policy is moot.

24         As to Plaintiff's request to permit him leave to amend his Complaint in order to plead
25   unexhausted claims under the new regulations, the court declines that invitation because, among
26   other reasons, "[t]here is no question that exhaustion is mandatory under the PLRA and that
27   unexhausted claims cannot be brought in court." *See Jones*, 549 U.S. at 211. It should also be
28   noted that "[a] prison's internal grievance process, not the PLRA, determines whether the

grievance satisfies the PLRA exhaustion requirement." *Id*. at 218. Also, it is far from clear that during the exhaustion process, Plaintiff's concerns will not be adequately addressed by CDCR such that no lawsuit would be ultimately necessary. This is, after all, the entire purpose of exhaustion; indeed, "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *See Woodford v. Ngo*, 548 U.S. 81, 95 (2006). Nor is there any pressing matter of any statute of limitations issue attending his potential forthcoming claims such as would make it unfair to put Plaintiff through the trouble of filing a new lawsuit when, or if, his claims under the new regulations ripen and are exhausted.

Therefore, the court finds that this case must be dismissed at this point for two reasons – first, his existing claims are rendered moot as discussed above; and second, his potential forthcoming claims, if any, suffer from a failure to exhaust available administrative remedies under the PLRA. The PLRA "requires that a prisoner challenging prison conditions exhaust available administrative remedies before filing suit." *Albino v. Baca*, 747 F.3d 1162, 1165 (9th Cir. 2014) (*en banc*) (citing 42 U.S.C. § 1997e(a)). If a plaintiff concedes a claim is unexhausted – as is the case here with regard to his potential forthcoming claims – and no exception applies, the unexhausted claim is subject to dismissal. *See Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled on other grounds by *Albino*, 747 F.3d at 1166. In such a circumstance, a court may even dismiss the claim on its own motion. *See Bennett v. King*, 293 F.3d 1096, 1098 (9th Cir. 2002) (affirming district court's *sua sponte* dismissal of unexhausted claims).

## CONCLUSION

Accordingly, for the reasons stated herein, Defendant's Motion to Dismiss (dkt. 96) is **GRANTED;** Plaintiff's Motion for Summary Judgment (dkt. 91) is **DENIED as moot**; and, Plaintiff's Complaint (dkt. 1-1) is **DISMISSED as moot**. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: February 23, 2024

ROBERT M. ILLMAN
United States Magistrate Judge

5